DECISION
This case is before the Court on the Rhode Island Probation and Parole Association's motion to confirm an October 8, 2008 arbitration award. The State simultaneously moves to vacate the award. The dispute arose after the State changed the working hours of a bargaining-unit position. The most recent arbitration award reset the position's hours to their original state and awarded the employees monetary compensation. For the reasons set forth below, the Court confirms the arbitration award in its entirety.
 I. Facts and Travel
The Rhode Island Probation and Parole Association of Classified Employees[1] represents clerical employees of the Rhode Island Court System. Prior to December of 2002, all of those employees had a daily work schedule of 8:30 a.m. to 4:30 p.m. Two Senior Word Processing Typists assigned to the District Court were regularly scheduled overtime from 7:30 a.m. to 8:30 a.m. in order to sufficiently prepare for the day's court schedule. In 2002, after an employee left one of these positions, the State posted a vacancy notice for the position which listed the hours as 7:30 a.m. to 3:00 p.m. When the position was filled, the new employee worked from 7:30 a.m. *Page 2 
to 3:00 p.m. and received no overtime. By contrast, the other Senior Word Processing Typist worked from 7:30 a.m. to 4:30 p.m. and continued to receive overtime pay for the 7:30 to 8:30 hour.
A grievance — contesting the change in the work schedule — was filed by RIPPA and pursued to arbitration. On January 21, 2005, an arbitrator upheld the grievance and directed the parties to meet in order to resolve a remedy. Because the parties were unable to do so, the Arbitrator issued another decision on September 6, 2005 finding the appropriate remedy was to leave the hours for the position at 7:30 a.m. to 3:00 p.m.
On a motion to vacate the award, the Superior Court remanded the case to a third arbitration for an appropriate remedy. SeeRhode Island Probation and Parole Assn. v. State,2008 WL 693614 (R.I. Super. 2008). On October 8, 2008, Arbitrator Richard Higgins issued an award which changed the schedule of the Senior Word Processing Typist back to 8:30 a.m. to 4:30 p.m. The award also directed that individuals who filled the position since its posting in 2002 should be compensated for one hour of overtime for each day actually worked. It is this third arbitration award which is the subject of the current dispute.
RIPPA presently moves to confirm the October 8, 2008 arbitration award, and the State moves to vacate.
 II. Standard of Review
"Public policy favors the finality of arbitration awards, and such awards enjoy a presumption of validity." Cityof East Providence v. International Association of FirefightersLocal 850, 982 A.2d 1281, 1285 (R.I. 2009). Thus, the Court reviews "arbitral awards under an exceptionally deferential standard[.]" North ProvidenceSchool Committee v. North Providence *Page 3 Federation of Teachers, Local 920,945 A.2d 339, 347 (R.I. 2008). Courts must vacate arbitral awards in the following circumstances:
 "(1) When the award was procured by fraud.
 (2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.
 (3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in G.L. 1956 § 28-9-13." Section 28-9-18(a).
An arbitrator exceeds his authority under § 28-9-18(a)(2) when the award does not "draw . . . its essence from the collective-bargaining contract or is not based on a pass[a]bly plausible interpretation thereof[.]" Rhode Island Brotherhood ofCorrectional Officers v. Department of Corrections,707 A.2d 1229, 1234 (R.I. 1998) (internal quotations omitted).
Even if the arbitrator makes a mistake in interpreting the law, the Court will uphold the arbitral award. Cityof East Providence, 982 A.2d at 1285. However, "if the arbitrator manifestly disregard[s]" the law or arrives at an irrational result, the Court will vacate the arbitral award. Id. at 1286. A manifest disregard of the law is more than a mere error in the law or failure to understand or apply the law correctly.Id.
Section 28-9-16, the statute governing the enforceability of arbitral awards, states:
 "To entitle the award to be enforced, as prescribed in this chapter, it must be in writing, within the time limited in the submission or contract, if any, subscribed by the arbitrator or arbitrators making it, and either filed in the office of the clerk of the court having jurisdiction as provided in § 28-9-14 or delivered to one of the parties or his or her attorney."
Upon timely application, the Court will confirm an award that meets the criteria in § 28-9-16, is otherwise enforceable, and has not been "vacated, modified, or corrected." Sections 28-9-13, 17 18, 20. *Page 4 
 III. Analysis
At the outset, this Court is well aware that "[t]he limited scope of judicial review of arbitration awards by the Superior Court is essential to ensure that parties may benefit from arbitration as an informal, expedient alternative to litigation in the court system."Purvis Systems, Inc. v. American Systems Corp.,788 A.2d 1112, 1118 (R.I. 2002).
A. Collective Bargaining Agreement
Section 8.2 of the Collective Bargaining Agreement ("CBA") defines overtime as "the required performance of work within the employee's classification in excess of the established work week." The CBA further indicates that the State is forbidden from forcing an employee to take time off in order to equalize potential overtime hours which have been worked.[2] The Arbitration award at issue indicates that:
 "[b]y virtue of the first . . . award, the daily schedule for the position in question should have always been 8:30 a.m. to 4:00 p.m I am satisfied that it is appropriate to view the 7:30 to 8:30 hour worked by the various individuals who filled the position in question as being outside the regular hours for that position and hence, by definition, overtime. . . .[t]he State, in essence, required those individuals to not work the last hour of their regular 8:30 a.m. to 4:00 p.m. schedule." Rhode Island Probation and Parole Association of Classified Employees v. State of Rhode Island Department of Corrections, LRC #31-08 (File #4431), 11, 12 (Oct. 8, 2008) (emphasis in original)."
The State now argues that — by awarding the employees with overtime pay for each day they worked — the arbitrator has exceeded his powers by manifestly disregarding the contract. However, "[a]s long as the award is drawn from the essence of the contract and is not wholly irrational, the arbitrators may make determinations that might otherwise not be possible to a *Page 5 
judicial tribunal." (citing Hart Engineering Co. v. PawtucketWater Supply Bd., 560 A.2d 329, 330 (R.I. 1989) ("An arbitrator has the inherent power to fashion an appropriate remedy as long as the award draws its essence from the contract and is based upon a `passably plausible' interpretation of the contract." (internal quotation omitted))). This Court finds that the arbitrator's award has been drawn from the essence of the contract and, therefore, does not exceed the arbitrator's authority. Moreover, the Court notes that "[p]ublic policy favors the finality of arbitration awards, and such awards enjoy a presumption of validity." International Ass'n ofFirefighters, 982 A.2d at 1285 (citing Pierce v. Rhode IslandHospital, 875 A.2d 424, 426 (R.I. 2005)).
Certainly, "many employers have argued in arbitration that monetary awards are the equivalent of pay for time not worked. . . ." 2 Labor and EmploymentArbitration § 33.07 at 33-21 (Tim Borstein et al. eds., 2010). Nevertheless, there are numerous cases in which arbitrators "use monetary awards in fashioning their remedies."Id. at 33-22. See e.g. R.I.Council 94, Local 2881, AFSCME, AFL-CIO v. R.I. Department ofEnvironmental Management, 1995 WL 941499 (R.I. Super. 1995) (upholding an arbitrator's award which ordered the state to pay employees overtime for time not actually worked). See also
Ray J. Schoonhoven, Fairweather's Practice and Procedure in LaborArbitration § 15.IV at 470-71 (4th ed., 1999). ("[A]rbitrators have awarded monetary damages . . . where an employer improperly failed to offer an employee an overtime opportunity.") This Court is satisfied that the award here "is designed to only compensate [the employees] for monies that [they] would have stood to earn."Id. at 470 (emphasis removed from original) (internal quotation omitted). The award draws its essence from the contract and does not manifestly disregard the CBA or exceed the arbitrator's authority. See City of East Providence,982 A.2d at 1285 ("As long as an arbitrator's award `draws its *Page 6 
essence' from the contract and is based upon a `passably plausible' interpretation of the contract, it is within the arbitrator's authority and our review must end." (internal citation omitted)). As such, the Court declines the State's motion to vacate the award based on an alleged disregard for the CBA.
B. Statutory limitations. According to statute:
 "[I]n the event that an employee discharges any sick leave . . . he or she shall be permitted to work overtime only after he or she has worked his or her full thirty-five (35) . . . hours. . . . Hours which are paid for but not actually worked except planned vacation days, personal days, jury duty, and leave for death in the employee's immediate family shall not . . . be used in computing overtime compensation." G.L. 1956 § 36-4-63(b)-(c).
Moreover, § 36-4-63(f) provides that:
 "[I]t shall be unlawful for any state agency [to] . . . enter into any agreement . . . which contains provisions that are inconsistent with the provisions of this section and the inconsistent provisions shall be null and void, whether the provisions result from agreement or the award of an arbitrator or arbitration. . . ."
The State argues that the arbitrator's award is in direct conflict with these statutes because it does not account for the possibility that the employees may have used sick leave and thus worked less than thirty-five hours in a given week. For the foregoing reasons, this Court finds this argument unavailing.
According to the Arbitrator, "[b]oth parties indicated in their presentations that . . . they would handle the actual computation of the remedy" if a monetary award was given. RIPPA v. State, LRC #31-08 (File #4431), 13. The Award directs:
 "[t]hat the incumbents who have filled that position since its posting in late 2002 will each be compensated for one hour at overtime rates for each day actually worked. No award will apply *Page 7 
to days not worked such as vacation, sick leave, personal leave, or other contractually established absences."
Notably, Section 9.1 of the CBA provides that "[h]ours which are paid for, but not actually worked, except holidays, vacation leave, and personal leave, shall not be counted as hours worked nor shall they be otherwise used in the computing of overtime." Because these provisions are nearly identical to those in G.L. § 36-4-63, this Court can find no inconsistency between the statute and the arbitrator's findings. As further discussed below, the Award recognizes and refers to contractually established absences; and is, therefore, consistent with both the statute and the CBA.
It is well settled that an arbitrator is not required to set forth reasons for an award or disclose findings of fact or conclusions of law on which that award is based." Feibelman v. F.O.,Inc., 604 A.2d 344, 345 (R.I. 1992). Moreover, "when a party claims that [an] arbitrator[ has] exceeded [his] authority, the claimant bears the burden of proving this contention, and every reasonable presumption in favor of the award will be made."Id. (quoting Coventry Teachers' Alliance v. CoventrySchool Committee, 417 A.2d 886, 888 (R.I. 1980)). "Public policy favors the finality of arbitration awards, and such awards enjoy a presumption of validity." City of East International Ass'n ofFirefighters, 982 A.2d at 1285 (citing Pierce,875 A.2d at 426). With these principles in mind, the Court is unable to find that the Arbitrator's award is inconsistent with State law, and instead finds it reasonable to presume that the award and the statute are not mutually exclusive. The award specifically indicates that it will not "apply to . . . contractually established absences." Notably, the CBA — much like § 36-4-63 — specifically excludes sick leave from the computation of overtime. This Court finds it reasonable to presume that the arbitrator was aware of this section of the CBA and intended that it be included in the consideration of "other contractually established absences" to which the award does not apply. *Page 8 
Thus, by indicating that "[n]o award will apply to days not worked . . . or other contractually established absences," the arbitration award implicates Section 9.1 of the CBA which expressly indicates that sick leave "shall not be . . . used in the computing of overtime."
It is worth noting that the parties indicated that they would compute the actual monetary remedy. Because the award specifically excludes "sick days," the parties will already need to consider them in their calculations. Casting "every reasonable presumption in favor of the award," this Court finds that the arbitrator properly took into account the possibility that the employees may have taken sick time in a given week. Feibelman, 604 A.2d at 345 (quotingCoventry Teachers' Alliance, 417 A.2d at 888. The parties, during their calculations, should be able to properly account for such leave and ensure compliance with § 36-4-63 such that that no employee is awarded overtime for a period in which sick leave was used to compute a thirty-five (35) hour work week. Accordingly, the Court finds that the arbitration award does not conflict with § 36-4-3 and does not exceed the arbitrator's authority.
 CONCLUSION
This Court confirms the arbitration award in its entirety. It draws its essence from the contract and does not manifestly disregard the CBA. Moreover, when making reasonable presumptions in favor of its validity, it is evident that the award does not conflict with § 36-4-3 because it accounts for the possibility that an employee may have used sick leave in a given week.
[1] Hereinafter referred to as "RIPPA."
[2] In pertinent part, Section 8.1 directs that "[n]o employee who has performed work before or after scheduled shift hours will have the right or will be required by the State, by reason thereof, to take time off to equalize working hours."